Mr. William E. Lackay Coleman City Attorney Post Office Box 279 Bushnell, Florida 33513
Dear Mr. Lackay:
You have asked for my opinion on substantially the following questions:
1. May the City of Coleman use the interest generated by the municipal fuel tax imposed pursuant to section 206.41(1)(c), Florida Statutes, for general operating purposes?
2. May the tax moneys collected pursuant to sections 206.605 and336.025, Florida Statutes, be used for sidewalk construction as a stand-alone project (that is, extending or constructing sidewalks without any accompanying road construction, reconstruction or maintenance) or for tree trimming projects when the trees are not directly on or adjacent to roads or streets?
In sum:
1. The interest accruing on the investment of municipal fuel taxes levied pursuant to section 206.41(1)(c), Florida Statutes, must be used for the same purposes and projects as the taxes themselves and may not be directed elsewhere.
2. Tax moneys collected pursuant to sections 206.605 and 336.025, Florida Statutes, may not be used for a stand-alone sidewalk construction project or for tree trimming projects when the trees are not directly on or adjacent to roads or streets. Several other possible revenue sources are available for sidewalk construction.
According to information you have submitted, it appears that the City of Coleman has funds in separate accounts for the municipal fuel tax imposed under section 206.41(1)(c), Florida Statutes, and the local option gas tax on motor fuel and special fuel authorized by section 336.025, Florida Statutes. You question the use of the funds themselves and the use of the interest generated by these accounts.
Question One
Your first question is whether the interest generated by the deposit or investment of these two funds may be used for general operating purposes of the city.
Chapter 206, Florida Statutes, authorizes motor fuel taxes and taxes on diesel fuel, aviation fuel and other types of fuel used in Florida, and provides for collection and distribution of these moneys.[1] Section 206.41(1)(c), Florida Statutes, authorizes the imposition of "[a]n additional tax of 1 cent per net gallon, which is designated as the `municipal fuel tax' and which shall be used for the purposes described in s. 206.605." Pursuant to section206.45(1), Florida Statutes, all moneys collected pursuant to section 206.41(1)(c), Florida Statutes, must be paid into the state treasury by the Department of Revenue for deposit in the Fuel Tax Collection Trust Fund. Moneys from the trust fund shall be transferred by the department and "[t]he municipal fuel tax shall be distributed as provided in s. 206.605."[2]
Section 206.605, Florida Statutes, provides that the proceeds of the municipal fuel tax must be transferred into the Revenue Sharing Trust Fund for Municipalities.[3] Expenditures from the trust fund must be made as specified in subsection (2) of the statute:
"Funds available under this section shall be used only for purchase of transportation facilities and road and street rights-of-way, construction, reconstruction, maintenance of roads and streets; for the adjustment of city-owned utilities as required by road and street construction, and the construction, reconstruction, transportation-related public safety activities, maintenance, and operation of transportation facilities. Municipalities are authorized to expend the funds received under this section in conjunction with other cities or counties or state or federal government in joint projects."
Thus, expenditure of these funds is strictly limited to those purposes and projects recognized by the statute.[4]
It has been the position of this office, reflected in a number of opinions, that in the absence of a statute directing how interest is to be used, the interest accumulating on taxes deposited in a bank prior to distribution follows the taxes.[5] In 1988 this office was asked by the Auditor General whether interest earned on funds generated by a tax levy by a district school board must be used for the purposes for which the tax was levied.[6] The opinion notes that the exercise of the taxing power by local governments results from a constitutional authorization implemented by statute rather than the exercise of home rule power. While nothing in the statutes specifically directs how interest generated on the proceeds of a school board tax levy should be used, the opinion utilizes the general rule to conclude that interest earned on such funds must be applied to the purposes for which the tax itself was levied.
In Attorney General's Opinion 92-13, this office was asked whether the receipt of interest from the investment of surplus ad valorem tax proceeds constituted a source of income other than from ad valorem taxes. Following the reasoning of earlier opinions, the 1992 opinion states that "the restrictions on the use of tax revenues carry over to any interest earned on such revenues and would not appear to alter the nature of the funds received." Thus, the opinion concludes that the interest earned on the investment of surplus ad valorem funds must be used for the same purposes as the ad valorem taxes and could not be considered a source of income distinct from the ad valorem taxes.
Similarly, in 1994 this office considered whether a county could use interest that accrued on impact fee accounts to pay for affordable housing waivers and deferrals of such impact fees. In concluding that such a use of interest was appropriate, this office stated that "the interest on an impact fee trust fund may be used to offset the cost of granting waivers and deferrals from the impact fee for low income housing, since such expenditures would be for the same purpose for which the impact fee was charged."
Section 206.605(2), Florida Statutes, provides the types of projects and purposes for which municipal motor fuel taxes may be used. It is my opinion, based on the discussion above, that the interest accruing on the investment or deposit of such taxes must also be used for those purposes and may not be directed elsewhere.
Question Two
Your second question is whether fuel taxes authorized to be spent pursuant to sections 206.605, and 336.025, Florida Statutes, may be used to fund sidewalk construction and tree trimming projects that are not transportation related.
As discussed in the response to Question One, section 206.605(2), Florida Statutes, specifically sets forth the purposes for which municipal fuel tax moneys may be used and limits those expenditures to transportation related facilities and projects. Section 336.025, Florida Statutes, authorizes the levy of local option fuel taxes on motor fuel and diesel fuel for county road system purposes.[7]
Section 336.025(1)(a)2., Florida Statutes, provides that "[c]ounty and municipal governments shall utilize moneys received pursuant to this paragraph only for transportation expenditures."
Further, section 336.025(1)(b)3., Florida Statutes, states that:
"County and municipal governments shall utilize moneys received pursuant to this paragraph only for transportation expenditures needed to meet the requirements of the capital improvements element of an adopted comprehensive plan. For purposes of this paragraph, expenditures for the construction of new roads, or the reconstruction or resurfacing of existing paved roads, shall be deemed to increase capacity and such projects shall be included in the capital improvements element of an adopted comprehensive plan. Expenditures for purpose of this paragraph shall not include routine maintenance of roads."
Section 336.025(7), Florida Statutes, defines "transportation expenditures" for purposes of the section:
"`[T]ransportation expenditures' means expenditures by the local government from local or state shared revenue sources, excluding expenditures of bond proceeds, for the following programs:
(a) Public transportation operations and maintenance.
(b) Roadway and right-of-way maintenance and equipment and structures used primarily for the storage and maintenance of such equipment.
(c) Roadway and right-of-way drainage.
(d) Street lighting.
(e) Traffic signs, traffic engineering, signalization, and pavement markings.
(f) Bridge maintenance and operation.
(g) Debt service and current expenditures for transportation capital projects in the foregoing program areas, including construction or reconstruction of roads."[8]
The construction of sidewalks does not fall within either the scope of section 206.605, Florida Statutes, for use of the municipal fuel tax funds or within section 336.025, Florida Statutes, for the use of a local option fuel tax.
Rather, section 206.47(7), Florida Statutes, authorizes the use of the constitutional fuel tax[9] for this purpose:
"The fuel tax funds credited to each county will be first distributed to meet the debt service requirements, if any, of the s. 16, Art. IX debt assumed or refunded by the State Board of Administration payable from the constitutional fuel tax. The remaining fuel tax funds credited to each county are surplus fuel tax funds and shall be distributed as provided by s. 9(c), Art. XII of the State Constitution or by law pursuant to that section and shall be used for the acquisition, construction, and maintenance of roads. For the purposes of this subsection, the term "maintenance" includes periodic maintenance and routine maintenance, as defined in s. 334.03, and may include the construction and installation of traffic signals, sidewalks,
bicycle paths, and landscaping. The funds may be used as matching funds for any federal, state, or private grant specifically related to these purposes." (e.s.)
Further, a municipality may provide improvements such as sidewalks by levying and collecting special assessments on the property that has been specially benefitted by such improvements, pursuant to section 170.01(1)(a), Florida Statutes. Thus, while municipal fuel tax moneys may not be used to construct sidewalks, other revenue sources for such projects are available.
Finally, it is my opinion that municipal fuel tax funds or funds from a levy of a local option fuel tax may not be used for a tree trimming project that does not involve trees located on or adjacent to roads or streets, as such a project would not be within the purposes authorized by sections 206.605 or 336.025, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, Pt. I, Ch. 206, Fla. Stat., relating to motor fuels; Pt. II, Ch. 206, Fla. Stat., dealing with diesel fuels; Pt. III, Ch. 206, Fla. Stat., providing for taxes on aviation fuel; and Pt. IV, Ch. 206, Fla. Stat., which relates to fuel and other pollutants.
[2] Section 206.45(2)(c), Fla. Stat.
[3] Section 206.605(1), Fla. Stat.
[4] See, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976), for the proposition that when the Legislature prescribes how a thing must be done that acts as a prohibition against its being done in any other way; and Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944).
[5] See generally, 85 C.J.S. Taxation s. 1064. Cf., Op. Att'y Gen. Fla. 75-241 (1975) (boards of county commissioners are authorized by s. 125.31, Fla. Stat., to invest surplus public funds and, in the absence of any statutory directive as to how the interest on such investments is to be credited or deposited, the income from this investment should be credited to or deposited back to the fund from which the surplus funds were taken for investment); Op. Att'y Gen. Fla. 75-241A (1975) (the interest on public moneys collected by the circuit court clerk on behalf of the county [or any other state or local official or body] for subsequent distribution thereto and invested prior to distribution must be credited to the county for other distributee], along with the principal); 85 C.J.S., supra (except insofar as the Legislature changes the rule, interest, penalties, and costs collected on delinquent taxes follow the tax and the apportionment thereof.)
[6] See, Op. Att'y Gen. Fla. 88-01 (1988). See also, Ops. Att'y Gen. Fla. 77-26 (1977) (interest on investment of revenue bond proceeds may not be used to meet deficit in operating budget); 82-29 (1982) (interest earned on investments by clerk of court of clerk's funds retained as income of that office).
[7] See, s. 334.03(8), Fla. Stat., designating the county road system.
[8] And see, s. 336.025(8), Fla. Stat., authorizing the expenditure of the proceeds of such tax to fund certain infrastructure projects.
[9] See, s. 206.41(1)(a), Fla. Stat., which states that this tax is levied by s. 16, Art. IX, of the State Constitution of 1885, as amended, and continued by s. 9(c), Art. XII of the 1968 State Constitution.